IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| IN RE: JAMES D. EVANS, | ) | |
| | ) | |
| Debtor, | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| YVONNE EVANS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | Civil Action No. 5:22-cv-00026 |
| v. | ) | |
| | ) | By:  Elizabeth K. Dillon |
| JAMES D. EVANS, | ) | United States District Judge |
| | ) | |
| Appellee. | ) | |

ON APPEAL FROM
THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION
No. 21-50075

---

## MEMORANDUM OPINION

This matter is on appeal from the bankruptcy court.  Creditor Yvonne Evans ("Yvonne") appeals an April 20, 2022 order from the bankruptcy court granting debtor James Evans' ("James") motion to hold her in contempt of court, in which the bankruptcy court found that Yvonne violated the automatic stay by filing a petition for rule to show cause in the Augusta County Circuit Court and that the filing did not fall within any exceptions to the automatic stay. The court heard argument on the appeal on February 21, 2022.  For the reasons set forth below, the bankruptcy court's order that Yvonne violated the automatic stay is affirmed.

I.   BACKGROUND

**A.  James Evans' Chapter 13 Bankruptcy Petition and Confirmation**

On February 10, 2021, James filed a chapter 13 bankruptcy petition.  *See In re James D. Evans,* No. 21-50075 (Bankr. W.D. Va.).  When he filed his petition, James scheduled his former spouse, Yvonne, as a creditor in the amount of $113,500.  James described this debt as "settlement agreement from divorce proceedings."  (Record on Appeal, Dkt. No. 2, at 20.) Yvonne then filed a proof of claim in which she reported the claim as $114,500 and attached the Property Settlement and Separation Agreement ("PSA") from the divorce proceedings as support for the claim.  According to paragraph 3 of the Marital Distribution provisions of the PSA, James was required to pay a total amount of $212,500 to Yvonne—the first $135,000 in a lump sum payment within 30 days of the execution of the PSA (September 12, 2020), and the remaining balance by payments of $1,000 per month for 77.5 months beginning October 15, 2020.  (*Id.*)  In his bankruptcy statements, James reported that in the three months prior to filing his petition, he paid $99,000 of the debt to Yvonne.  He also reported $1,000 per month as an ongoing monthly expense for domestic support.  (*Id.*)  Yvonne classified her entire claim as a priority debt, but neither the schedules nor proof of claim disclosed any amounts as past-due support as of the date of the petition.   In his chapter 13 plan, James did not classify his ongoing payment to Yvonne as payment for past due amounts; he scheduled her debt as nonpriority for which his plan did not require separate treatment.  (*Id.* 21.)

Yvonne objected to confirmation of the plan.  However, the parties resolved the objection, so the bankruptcy court did not hear that objection nor make any findings on the matters raised.  On June 1, 2021, the bankruptcy court confirmed James's chapter 13 plan, meaning the terms of that plan would bind James and Yvonne (and other creditors) thereafter.

*See* 11 U.S.C. § 1327(a).  These terms required, by consent of both parties, that James pay $1,000 per month directly during the term of the plan and that any balance of the $114,500 debt still owing at the end of the plan would survive the chapter 13 discharge.

## B.  Yvonne Evans' State-Court Contempt Action Against James Evans

On June 10, 2021, nine days after confirmation of James' chapter 13 plan, Yvonne filed a petition for rule to show cause in the Augusta County Circuit Court, asking that James appear to show cause why he should not be held in contempt for noncompliance with the PSA.  (Record on Appeal 22.)  That petition asked the state court to (1) issue an order directing James to show cause why he should not be held in civil contempt; (2) award judgment to Yvonne for her attorney's fees and costs for her state court attorney and for the attorney who represented her in the bankruptcy case; and (3) to award her any other appropriate relief.  (*Id.*)  She claimed she was informed by her counsel that "although the automatic stay prevents most collection activity against a debtor, Bankruptcy Code § 362(b)(2)(B) provides an exception that allows pursuit of the collection of a domestic support obligation from property that is not property of the estate," and filed the petition based upon that exception.  (*Id.* 21–22 (quoting Resp. of Yvonne Evans to Debtor's Mot. Contempt, No. 21-50075, Dkt. No. 66).)

On August 16, 2021, the state court held a hearing on Yvonne's June 10 petition against James, and at that time also heard the status of an earlier petition Yvonne had filed in December 2020 seeking a contempt order against James for violating the PSA.  (*Id.* 22.)  In the December 2020 petition, Yvonne sought to enforce a provision in the PSA requiring James to indemnify and hold her harmless of a joint unsecured debt owed to the Bank of the James for a mortgage deficiency and to nonsuit his third-party complaint against her in a pending state-court collection action.  The court took evidence on these matters at the hearing.  (*Id.*)

3

On August 27, 2021, the state court judge issued an order finding that James was in contempt of court for failure to perform certain provisions of the PSA and directing him to provide certain documentation, perform certain tasks, and make certain payments. (*Id.*) Among those tasks, the state court ordered James to provide documentation showing that Yvonne had been removed from the joint debt owed to the Bank of the James. As to the payments, the state court directed James to "use funds from his retirement accounts which he exempted from his bankruptcy estate . . ., so it is clear that th[e] order does not violate the terms of 11 U.S.C[.] § 362 (the 'automatic stay')." (*Id.* 23.) The state court ordered James to comply by no later than September 15, 2021, and took under advisement the issue of jail time on James. (*Id.*) The state court reviewed the matter again on October 4 and 18, 2021, and set a hearing for November 1, 2021. Based on Yvonne's representations to the bankruptcy court, during this period James complied with the ordered tasks, except for the obligation for him to prove that the Bank of the James had released Yvonne from liability on the mortgage deficiency. (*See id.* (citing Resp. of Yvonne Evans to Debtor's Mot. Contempt 6).)

## C. James Evans' Contempt Motion; Bankruptcy Court's Order

In the bankruptcy court on October 29, 2021, James filed a motion to hold Yvonne in contempt of court for violating the automatic stay and the confirmation order. (*Id.* 21 (citing James Evans' Mot. Contempt, No. 21-50075, Dkt. No. 35).) He alleged that Yvonne filed or continued an action in the Augusta County Circuit Court to (1) enforce the PSA as incorporated into the final decree of divorce; and (2) compel him to pay a debt owed to Bank of the James for an unsecured deficiency from foreclosure of their marital home. Based on these allegations, James asked the bankruptcy court to (1) hold Yvonne in contempt of court; (2) order her to pay $25,000 in compensatory and punitive damages; and (3) award James' counsel $5,000 in

4

attorney's fees.  On January 21, 2022, Yvonne responded to James' motion, explaining the nature of the state-court actions as described above.  (*See id.* (citing Resp. of Yvonne Evans to Debtor's Mot. Contempt).)  Also in that response, Yvonne noted that on November 1, 2021 (the first business day after James filed his contempt motion in the bankruptcy court), Yvonne moved the state court to withdraw her contempt action against James specifically as to the requirement that he have her removed from her obligation to Bank of the James as a joint obligor on the mortgage deficiency, which the state court granted just over a week later.  (*Id.* 23.)  In that order, the state court also directed James to pay $3,116.97 to Yvonne for her attorney's fees.  (*Id.* (quoting State Ct. Order, No. 21-50075, Dkt. No. 50).)

After holding two prior hearings on James' contempt motion, on January 26, 2022, the bankruptcy court held an evidentiary hearing, at which it heard testimony from James, Yvonne, and Sarah Houck (Yvonne's divorce attorney).  (*Id.*)  James testified that he understood from statements made at the August 16 and October 4, 2021 state-court hearings that he believed he had to either pay the Bank of the James or refinance the debt to the Bank of the James, and that he would face jail time if he did not do so.  Ms. Houck testified that the debt described in paragraph 3 of the PSA (which sets out the payments James was to make to Yvonne) was in the nature of support; she further reported that the matters that were the subject of Yvonne's June 10, 2021 petition for rule to show cause did not include any collection of amounts under paragraph 3 of the PSA.  According to Ms. Houck, the petition was to compel James to, among other things, have the Bank of the James release Yvonne from the joint deficiency debt.  Lastly, Yvonne testified that when James filed his chapter 13 petition on February 10, 2021, he was behind two or three of his monthly $1,000 payments; she further testified to her understanding that these payments were addressed in the chapter 13 confirmation plan.  (*Id.* 24.)

In an order dated February 4, 2022, the bankruptcy court granted James' motion.  (*Id.* 29.)  First, the court concluded that Yvonne violated the automatic stay by filing the petition in the Augusta County Circuit Court and that the filing did not fall within the narrow exceptions to the automatic stay enumerated in 11 U.S.C. § 362(b).  The focal point of the analysis was whether Yvonne's petition constituted a "collection of a domestic support obligation from property that is not property of the estate," under section 362(b)(2)(B).  Yvonne argued that her actions fell into this exception because, in her view, "collection" refers not only to literal "collection" (i.e., the process of receiving something) but also the commencement of enforcement actions, provided that enforcement action relates in some manner to a domestic support obligation.  The court disagreed, holding that the petition exceeded the scope of the term "collection" as used in the section 362(b)(2)(B) exception.  Moreover, the court observed that Yvonne's state-court petition was not simply directed at "property that is not property of the estate," but instead was directed at James' person; as such, the court reasoned that, based on the plain reading of section 362(b)(2)(B), Yvonne's petition (as well as the related hearings) did not fall within the statutory exception to the automatic stay.  (*Id.* 24–26.)

Next, the bankruptcy court held that Yvonne willfully violated the automatic stay.  (*Id.* 27.)  Although Yvonne consistently emphasized that she did not intend to violate the automatic stay and indeed sought the advice of bankruptcy counsel on whether filing the petition would violate the stay, she did have complete knowledge of the pending bankruptcy case (as she participated in it) and simply chose not to seek relief from the automatic stay before pursuing action against James in state court.  This, the court reasoned, was sufficient to find a willful violation.  (*Id.* 26–27.)

Lastly, the bankruptcy court elected to award actual damages to James, but not punitive damages.  (*Id.* 27–28.)  As to actual damages, the court noted, evidence presented at the hearing demonstrated that Yvonne's violation of the stay caused James to consult his bankruptcy attorney, file this motion in the bankruptcy court to stop the state-court action, and appear before that court with counsel.  Moreover, James paid attorney's fees incurred by Yvonne to three law firms (as was ordered by the state court).  The court concluded that James' actual damages included all amounts owed to his bankruptcy lawyer in relation to this motion as well as the amounts paid to Yvonne's counsel related to the state-court action.  As to punitive damages, after conducting a holistic analysis as required by the case law, the court concluded that Yvonne's conduct, though willful, did not reach the level of egregiousness or malevolence to warrant punitive damages.  (*Id.* 26–28.)

**D.  Yvonne Evans' Motion for Bankruptcy Court to Reconsider and Amend Order**

On February 18, 2022, Yvonne moved the bankruptcy court to reconsider and amend its order finding that she violated the automatic stay.  (*Id.* 119–21.)  Specifically, Yvonne challenged the bankruptcy court's conclusion that "collection" under section 362(b)(2)(B) refers only to the receipt of funds, submitting that the court "may not have considered certain case law that has been decided contrary to the Court's holding, and a reversal of the viewpoint of [the *Collier on Bankruptcy* treatise], which was the foundation for the holdings in the cases on which [the] Court may have relied."  (*Id.* 122–23.)

After holding a hearing, the bankruptcy court denied Yvonne's motion.[1]  (*See* Supp. Record on Appeal, Dkt. No. 23.)  In doing so, the court rejected Yvonne's argument that the

---

[1]  Under Federal Rule of Bankruptcy Procedure 8009(a), the appellant must designate (and the appellee may but is not required to designate) the items to be included in the record on appeal.  Fed. R. Bankr. P. 8009(a)(1)(A), (a)(2).  The record on appeal "*must* include," among other things "any opinions, findings of fact, and conclusions of law relating to the issues on appeal."  Fed. R. Bankr. P. 8009(a)(4) (emphasis added).  Here, in her

*Collier* treatise has changed its position on the meaning of section 362(b)(2)(B), finding that the most recent version of *Collier* is consistent with the court's analysis of that exception. Additionally, the court surveyed the two broad lines of case law interpreting section 362(b)(2)(B) both expansively and narrowly, and again concluded that the term "collection" as used in the exception is not as expansive as Yvonne suggested. Lastly, the court underscored that, because Yvonne had participated in the bankruptcy case and endorsed the order of confirmation, even if she were correct in her interpretation of section 362(b)(2)(B), she remains bound by the confirmed plan—which binds all creditors, even those holding nondischargeable debts, and even former spouses.

The bankruptcy court issued its opinion and order on the motion to consider on April 20, 2022. Yvonne's appeal followed shortly thereafter.

## II.  DISCUSSION

### A.  Jurisdiction and Standard of Review

Yvonne's notice of appeal from the bankruptcy court's order finding her in contempt was timely because it was filed within 14 days of the order denying her motion to reconsider. *See*

---

designation of the record on appeal, Yvonne included (among other documents) her motion to reconsider and amend the bankruptcy court's order and her memorandum in support of that motion (*see* Record on Appeal 2) but did not include the bankruptcy court's reasoned opinion and order denying that motion to reconsider, dated April 20, 2022. In this appeal, Yvonne challenges the conclusions reached by the bankruptcy court not only in its initial order finding her in contempt, but also in its opinion and order denying the motion to consider. She also relies upon the date of the latter order in alleging that her appeal was timely. (*See* Appellant's Br., Dkt. No. 5, at 4.) Thus, that opinion and order should have been included in the appellant's designation of the record as an "opinion . . . relating to the issues on appeal." Fed. R. Bankr. P. 8009(a)(4).

Under Federal Rule of Bankruptcy Procedure 8009(e)(2), if anything "material to either party" is omitted from the record "by error or accident," the district court in which the appeal is pending may correct the omission by certifying a supplemental record. Fed. R. Bankr. P. 8009(e)(2); *see also Rouse v. Nutrien Ag Sols., Inc.*, No. 5:20-CV-552-D, 2021 WL 9848138, at *1 n.1 (E.D.N.C. July 12, 2021) (citing the rule in granting motion to correct record). The purpose of Rule 8009(e) "is to ensure the appellate court has a complete and accurate record of the proceedings that occurred in the original court." *See Uebel v. Evans*, No. 4:19-cv-00032-TWP-DML, 2020 WL 759415, at *4 (S.D. Ind. Feb. 13, 2020). As such, the court has certified a supplemental record (Dkt. No. 23) which includes the bankruptcy court's order on Yvonne's motion to reconsider.

Fed. R. Bankr. P. 8002(b)(1).  This court has subject matter jurisdiction over bankruptcy appeals pursuant to 28 U.S.C. § 158(a).  *See In re Yellow Poplar Lumber Co., Inc.*, 598 B.R. 833, 836 n.2 (W.D. Va. 2019).  Section 158(a) provides that "the district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees . . . entered in cases and proceedings referred to the bankruptcy judges under Section 157 of this title."  28 U.S.C. § 158(a)(1).

In general, the standard of review of a bankruptcy appeal in district court is the same standard used when an appellate court reviews a district court proceeding.  *See* 28 U.S.C. § 158(c)(2) (providing that a bankruptcy appeal "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts").  A district court reviews the bankruptcy judge's findings of fact under the "clear error" standard, and reviews conclusions of law *de novo*.  *In re Taneja*, 743 F.3d 423, 429 (4th Cir. 2014).

The district court "may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings."  *Harman v. Levin*, 772 F.2d 1150, 1153 n.3 (4th Cir. 1985).  Whether the automatic stay provisions of 11 U.S.C. § 362(a) have been violated is a question of law reviewed *de novo*.  *See Skillforce, Inc. v. Hafer*, 509 B.R. 523, 528 (E.D. Va. 2014) (citing *In re Dornier Aviation (N. Am.) Inc.*, 453 F.3d 225, 231 (4th Cir. 2006)).  On the other hand, a bankruptcy court's determination that a stay violation was willful, so as to subject the violator to an award of damages against it, is reviewed for clear error.  *Id.* (citing *Eskanos & Adler, P.C., v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002)).

## B.  The Automatic Stay and the § 362(b)(2)(B) Exception

Subsection 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of" eight explicitly listed, broad categories

of action.  11 U.S.C. § 362(a).  That is, upon the filing of the petition, the Bankruptcy Code bars

the commencement or continuation of any judicial, administrative, or other action against the

debtor that was or could have been commenced before the commencement of the bankruptcy

case or to recover a claim against the debtor that arose before the bankruptcy case.  *Id*.  The stay

expires when the debtor is granted or denied a discharge, the case is dismissed, or the case is

closed.  11 U.S.C. § 362(c)(2).  The Bankruptcy Code gives an individual debtor a right of action

for damages, including punitive damages and attorney's fees, resulting from a willful violation of

the automatic stay.  11 U.S.C. § 362(h); *Budget Serv. Co. v. Better Homes of Va., Inc*., 804 F.2d

289, 292 (4th Cir. 1986).  The bankruptcy court may redress a violation of the automatic stay

under its civil contempt powers.  *In re Walters*, 868 F.2d 665, 669 (4th Cir. 1989).

However, the automatic stay is not without limit, as section 362(b) articulates a list of

exceptions.  In pertinent part for this appeal, section 362(b)(2)(B) provides that the filing of a

bankruptcy petition "does not operate as a stay . . . under subsection [362](a) . . . of the collection

of a domestic support obligation from property that is not property of the estate."  11 U.S.C. §

362(b)(2)(B).

## C.  Violation of the Automatic Stay and Applicability of the § 362(b)(2)(B) Exception

On appeal, Yvonne argues that her actions would have violated the automatic stay but for

section 362(b)(2)(B)'s narrow exception for "collection" of a domestic support obligation from

"property that is not property of the estate."  She asserts that the contempt proceedings she

brought in state court constituted a "collection" of a non-estate domestic support obligation.  In

doing so, she asks the court to construe section 362(b)(2)(B) broadly to include the initiation of

such contempt proceedings.  If Yvonne's reading of the statute is correct, the exception applies

and her post-petition contempt action is exempt from the automatic stay.[2]  James argues for (and the bankruptcy court below adopted) a narrower reading of "collection" that purports to be consistent with the express language found in other exceptions to the stay and maintains that section 362(b)(2)(B) cannot be read to encompass contempt proceedings to enforce domestic support obligations.  The Fourth Circuit has not directly addressed this issue.  While there is a split of authority on this question in lower courts, this court is persuaded by the bankruptcy court's reasoning and its interpretation of section 362(b)(2)(B).

The inquiry predictably begins with the text of the statute itself.  "No one provision of the Bankruptcy Code can be viewed in isolation from the others; each provision must be construed in the context of the entire statute."  *In re Hudson Transfer Grp., Inc.*, 245 B.R. 456, 460 (Bankr. S.D.N.Y. 2000) (citing *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988)).

Section 362(b)(2)(B)'s exception to the automatic stay applies to "the *collection* of a domestic support obligation that is not property of the estate."  11 U.S.C. § 362(b)(2)(B) (emphasis added).  As courts have observed, several exceptions to the automatic stay instead refer to "enforcement" or acts to "enforce."  *See, e.g.*, § 362(b)(2)(G) (exempting from the automatic stay the "*enforcement* of a medical obligation, as specified under title IV of the Social Security Act") (emphasis added); § (b)(20) (exempting "any act to *enforce* any lien against or security interest in real property" if the debtor is ineligible or otherwise prohibited to be a debtor in a bankruptcy case) (emphasis added).  Another exception to the automatic stay—section 362(b)(2)(A)(ii) (which happens to immediately precede the exception at issue in this appeal)—refers to "the *commencement* or *continuation* of a *civil action or proceeding*" for several

---

[2]  The court assumes, for the sake of its analysis, that the each of the objects of the contempt proceedings were "domestic support obligation[s]" within the meaning of section 362(b)(2)(B).

enumerated domestic legal purposes, one of which is—strikingly—the "establishment or modification of an order for *domestic support obligations*." *See id.* § 362(b)(2)(A).  And in one exception, Congress even once used the terms "commencement of an action" and "enforcement" together.  *See id.* § 362(b)(4) (exempting "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit").

The Supreme Court has held that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983).  In this statute, Yvonne characterizes the filing of the civil contempt suit to enforce the PSA as mere "collection."  In reality, Yvonne's state-court contempt action could be more accurately described as the "commencement . . . of a civil action or proceeding"—namely, contempt—for the "enforcement" of the PSA and other "domestic support obligation[s]."  *See* §§ 362(b)(2)(A)(ii), (b)(2)(G).  And reading the entire statute makes clear that Congress knew how to create automatic-stay exceptions for the "commencement" of certain "civil action[s] or proceeding[s]," *see* § 362(b)(2)(A)(ii)—and for the "enforcement" of certain legal obligations, *see* § 362(b)(2)(G), but chose not to use any of those terms in the exception Yvonne relies upon here.  This court is obligated to accept that Congress was purposeful in its word choice and thus that there is no exception to the automatic stay for the commencement of civil contempt enforcement litigation with respect to a domestic support

obligation.[3]  *See, e.g.*, *Hass v. Duncan*, No. 1:05cv91(JCC), 2005 WL 5714293, at *2–3 (E.D.

Va. July 6, 2005); *In re Grinspan*, 597 B.R. 725, 741 (Bankr. E.D.N.Y. 2019).[4]

To be sure, an alternative line of persuasive authority has adopted a broader reading of

the word "collection."  In doing so, those courts have often looked to the "plain meaning" of the

word as articulated in dictionaries and concluded that "collection," as used in section

362(b)(2)(B), necessarily constitutes the "act of collecting" and "not merely a passive

undertaking."  *See, e.g.*, *In re Johnston*, 321 B.R. 262, 277 (D. Ariz. 2005).  Even if that were

true, it does not follow that the term "collection" must then embrace any act one could

conceivably take, provided the object of that act was to acquire a liquid asset.  For example, the

act of robbing a bank might result in the acquisition of liquid assets, but one could hardly label

that conduct mere "collection."  Likewise, here, it " strain[s] the text of § 362(b)(2)(B)" to

suggest that commencing a civil contempt action against another with the threat of jail time may

pass as "collection," *see Grinspan*, 597 B.R. at 743, especially in the context of this statute

where the words "action or proceeding" and "enforcement" are used repeatedly elsewhere.

Further, Yvonne's contempt suit was not a collection "*from property* that is not property

of the estate."  *See* § 362(b)(2)(B) (emphasis added).  Nor was it against property *at all*.  As the

bankruptcy court found below, the contempt proceeding was not an action against an asset or

other isolated item of property outside the estate but, rather, was an action against James

---

[3]  Moreover, "[s]ince proceedings to enforce alimony or support orders are normally continuations of earlier proceedings, the absence of language in section 362(b) excepting the continuation of enforcement proceedings from the stay casts significant doubt on whether such proceedings are included in the exception to the automatic stay."  *See* Henry J. Sommer & Margaret Dee McGarity, *Collier Family Law and the Bankruptcy Code* ¶ 5.03[3][b][iii] (Matthew Bender).

[4]  In *Grinspan*, for example, the Bankruptcy Court for the Eastern District of New York held that a contempt motion filed by the debtor's ex-wife for nonpayment of obligations resulting from divorce litigation did not fall within the meaning of "collection" because "collection" is not synonymous with "enforcement."  *Grinspan*, 597 B.R. at 740–41.

13

himself—seeking an order that he be compelled to take certain action in compliance or face jail time.[5]  *See, e.g.*, *Hass*, 2005 WL 5714293, at *2 (finding that creditor ex-wife violated the automatic stay by bringing a contempt proceeding in state court because the proceeding "targeted the Debtor's person rather than property not of the bankruptcy estate."); *In re Lori*, 241 B.R. 353, 356 (Bankr. M.D. Pa. 1999) (reasoning that because the petition to hold the debtor in contempt targeted the debtor himself, rather than his post-petition income, the attempt to enforce collection was not excluded from the provisions of 11 U.S.C. § 362).

The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws."  S. Rep. No. 95–989, at 54 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5840.  Its purpose, "in addition to protecting the relative position of creditors, is to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding."  *Winters by & Through McMahon v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir. 1996) (citing *In re Stringer*, 847 F.2d 549 (9th Cir. 1988)).  Consistent with the court's obligation to construe the exceptions "narrowly to secure [a] broad grant of relief to the debtor," *In re Stringer*, 847 F.2d at 552, the court finds that Yvonne's petition for rule to show cause and related state-court contempt filings violated the automatic stay and do not fit within the § 362(b)(2)(B) exception.

---

[5]  Yvonne has argued, at the hearing in this appeal and in the bankruptcy court below, that the contempt proceeding did not violate the automatic stay because her object in bringing the action was not to force James's incarceration but rather to force payment.  First, the court is skeptical that Congress intended for the contours of the automatic stay to be defined subjectively based upon one's motivation for his or her actions.  But even if that were the case, the facts developed below indicate that jail time was indeed an object, if not *the* object, of the petition.  At the hearing in the bankruptcy court, Ms. Houck (Yvonne's divorce attorney) testified unequivocally "oh, my client wanted jail time."  (Dkt. No. 23 at 15 n.6.)  The debtor also testified that "he was instructed he would face jail time if he did not 'take care of' the demands in the petition for rule to show cause."  (*Id.*)

### III.  CONCLUSION

For the foregoing reasons, the order of the bankruptcy court is affirmed.[6]  An appropriate order will follow.

Entered: March 20, 2023.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge

---

[6] Because Yvonne did not seek review of the bankruptcy court's finding that her violation of the automatic stay was willful or that James was entitled to actual damages, this court will not review it.